MANDATE

19-3555
*Sealy v. State Univ. of N.Y. at Stony Brook*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand twenty.

PRESENT:
        REENA RAGGI,
        RICHARD J. SULLIVAN,
        WILLIAM J. NARDINI,
           *Circuit Judges.*

---

COLIN SEALY,

        *Plaintiff-Appellant*,

v.                                                     19-3555

STATE UNIVERSITY OF NEW YORK AT STONY BROOK,

        *Defendant-Appellee*,

Michael J. Sabia, Glen Castro, Ronald T. Danler, Richard Adkins, John and Jane Doe,

        *Defendants*.[1]

---

**FOR PLAINTIFF-APPELLANT:**         Colin Sealy, *pro se*, Brentwood, NY.

---

[1] The Clerk of Court is respectfully directed to amend the caption as reflected above.

MANDATE ISSUED ON 11/23/2020

| FOR DEFENDANT-APPELLEE: | DAVID LAWRENCE III (Barbara D. Underwood, Judith N. Vale, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY. |
|---|---|

Appeal from a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on September 30, 2019 is **AFFIRMED**.

Appellant Colin Sealy, proceeding *pro se*, appeals the district court's dismissal of his claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, against his employer, the State University of New York at Stony Brook ("SUNY"). Sealy, who is Black and is a naturalized U.S. citizen from Barbados, asserted that SUNY discriminated against him based on his race and national origin, retaliated against him for complaining of that discrimination, and subjected him to a hostile work environment. The district court granted SUNY's motion to dismiss the amended complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I.     Sealy's Claims under 42 U.S.C. § § 1981, 1983**

We review the dismissal of a complaint under Rules 12(b)(1) and 12(b)(6) *de novo*. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020). The district court properly dismissed Sealy's claim under 42 U.S.C. § 1981 because "the express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units" like SUNY. *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Even construing Sealy's claim as one under § 1983, however, in the absence of either a waiver or

valid congressional abrogation of a State's sovereign immunity under the Eleventh Amendment, "federal courts may not entertain a private person's suit against a State," *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011), or, by extension, SUNY, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594–95 (2d Cir. 1990) ("For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." (internal quotation marks and alteration omitted)). We have specifically recognized that "no relief, either legal or equitable, is available against SUNY" under § 1983. *Id.* at 594. Because SUNY was the only defendant named in Sealy's amended complaint, the district court properly dismissed this claim as barred by sovereign immunity.

## II. Sealy's Title VII Claims

### A. Race Discrimination

Although plaintiffs may bring claims for racial discrimination against SUNY under Title VII, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 447–48 (1976) (recognizing that the Eleventh Amendment does not shield state entities against damages claims brought under Title VII), Sealy does not dispute the district court's ruling that he abandoned his disparate treatment claim when he failed to counter SUNY's motion to dismiss it. He has therefore abandoned the issue on appeal. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). Likewise, Sealy does not contest the district court's dismissal of his national origin claim before this Court. Thus, that claim is abandoned as well. *See id.*

### B. Retaliation

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When a party appears *pro se* before the district court, however, we "conduct our examination with special solicitude, interpreting the complaint to raise the strongest claims that it suggests." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks omitted).

Title VII deems it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "For a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) because he has opposed any unlawful employment practice." *Duplan*, 888 F.3d at 625 (internal quotation marks and alterations omitted). An adverse employment action in a retaliation case "includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 626–27 (internal quotation marks omitted).

Sealy has failed to plausibly allege any adverse employment actions taken against him because of his opposition to an unlawful employment practice. As the district court properly recognized, Sealy has identified two instances of protected activity: (1) the filing of his discrimination complaint with the New York State Division of Human Rights ("DHR") on April

4

15, 2016; and (2) service of his complaint in this action on SUNY on March 15, 2017. Sealy has also alleged a variety of acts by SUNY that he contends were adverse employment actions: (1) coworker Randy Cuskin's threats against Sealy in May and September 2016; (2) the denial of an overtime opportunity in September 2016; (3) Cuskin's March 2, 2017 reassignment to the location at which Sealy worked, despite Sealy's supervisor's knowledge of the previous altercations between Sealy and Cuskin; (4) the assignment of another employee to "watch over" Sealy as he removed toilets from a bathroom on April 25, 2017; and (5) Sealy's being asked to sign a blank annual performance evaluation form on July 27, 2017.

Sealy has not presented any direct evidence of retaliatory animus. *See Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). And while a plaintiff may establish retaliatory animus "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct," *id.* (internal quotation marks omitted), where a plaintiff relies on temporal proximity alone, the protected activity and adverse action must occur "very close" together, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). Indeed, we have held that adverse employment actions occurring approximately three months after protected activity are too attenuated to give rise to an inference of retaliation. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990). Here, other than Cuskin's threat in May 2016 and the one instance of Sealy being "watch[ed] over" as he performed a repair job in April 2017, all the alleged actions occurred at least four months, and as many as eleven months, after any assertedly protected activity. That is simply too long of a gap to give rise to an inference of retaliation without some other evidence of retaliatory animus.

5

As for the two incidents that occurred closer to Sealy's protected activity, they do not plausibly establish retaliation. Sealy's complaint explicitly alleges that Cuskin's May 2016 threat occurred not because Sealy filed his complaint with DHR, but because Sealy refused to serve as Cuskin's reference for a pistol permit application. And in addition to the lack of any allegations suggesting that Sealy was "watch[ed] over" on April 25, 2017 because he had recently served SUNY with the complaint in this lawsuit, the April 2017 incident is not the type of adverse action that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan*, 888 F.3d at 627 (internal quotation marks omitted). Although Sealy alleges that he disagreed with his manager on whether the toilets needed to be replaced and disposed of, he does not allege facts indicating that the employee assigned to supervise this work harassed or intimidated him in any way, or that this supervision reflected anything more than "a mere inconvenience or an alteration of job responsibilities." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks omitted). Accordingly, the district court correctly held that Sealy did not plausibly allege a retaliation claim under Title VII.

### C. Hostile Work Environment

To plead a hostile-work-environment claim under Title VII, a plaintiff first must allege that "the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). The plaintiff must also show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This test sets a "high bar" as the plaintiff must show "not only that he subjectively perceived the environment

to be abusive, but also that the environment was objectively hostile and abusive." *Duplan*, 888 F.3d at 627 (internal quotation marks and alteration omitted). In considering whether a plaintiff has satisfied this test, we consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. NYC Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (internal quotation marks omitted).

Here, in support of his hostile-work-environment claim, Sealy points to SUNY's reassignment of him to the less centrally located Chapin complex, denial of overtime opportunities, restrictions upon his access to workplace storage facilities, provision of a work vehicle in a state of disrepair, denial of new tools and later requirement that he sign for them, assignment of a coworker to watch over Sealy's work, and denial of a carpenter to assist with an assignment, as well as the threats Sealy received from Cuskin. But as the district court correctly recognized, these relatively minor and sporadic incidents cannot support a finding that Sealy's work environment was "objectively hostile and abusive." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see, e.g.*, *Littlejohn*, 795 F.3d at 321 (holding that plaintiff failed to plausibly allege a hostile work environment based on allegations that her supervisor made negative comments about her, wrongfully reprimanded her, replaced her at meetings, and increased her reporting schedule). Moreover, Sealy has failed to allege that the allegedly hostile conduct "occurred *because of* a protected characteristic." *Tolbert*, 790 F.3d at 439 (emphasis added).

To be sure, Sealy alleged for the first time in his opposition to SUNY's motion to dismiss at least one incident that plainly qualifies as discriminatory conduct. Specifically, Sealy

recounted an incident in which one of his supervisors "tore down a poster of President Obama that [Sealy] had hanging on the wall next to [his] desk" and "launched into a racially hostile rant."[2] Sealy's Opp'n Mot., Dist. Ct. Doc. No. 40, at 7. In light of Sealy's *pro se* status, the district court properly exercised its discretion to consider this fact, even though it did not appear in Sealy's amended complaint, and we consider it here, even though Sealy does not mention it in his brief on appeal. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). But we agree with the district court that this isolated incident – although reprehensible – does not establish that Sealy's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Sealy's] employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21. The district court therefore did not err in dismissing Sealy's hostile-work-environment claim.

\* \* \*

We have considered Sealy's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] In his opposition, Sealy also alleged for the first time one other incident in which a different SUNY employee made a racially discriminatory comment at some point before January 8, 2015. The district court properly did not consider this allegation, as it occurred outside Title VII's 300-day limitations period and was not "sufficiently related" to the other alleged incident involving a different employee to be considered part of the same hostile work environment. *See McGullan v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010). But even if we were to consider this earlier incident, the two incidents, occurring at least a year apart (and potentially longer, as Sealy does not give dates for either), do not demonstrate that such discrimination "permeated" Sealy's workplace. *Littlejohn*, 795 F.3d at 320.